Filed 1/20/23 P. v. Vargasarellano CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | H048062 |
| Plaintiff and Respondent, | (Santa Clara County Super. Ct. No. C1481473) |
| v. | |
| IVAN VARGASARELLANO, | |
| Defendant and Appellant. | |

Defendant Ivan Vargasarellano appeals following his resentencing, as ordered by this court in a prior nonpublished opinion, *People v. Vargasarellano*, (Nov. 25, 2019, H045538).

On appeal, Vargasarellano argues that the minute order and abstract of judgment must be corrected to conform with the trial court's oral pronouncement that all fines and fees are stayed until he is released from custody. The Attorney General concedes that argument, and we agree the concession is appropriate.

In a supplemental brief,[1] Vargasarellano argues that he is entitled to a new trial, with the gang evidence tried in bifurcated proceedings, pursuant to newly-enacted Penal

---

[1] In connection with his supplemental brief, Vargasarellano has requested that this court take judicial notice of excerpts of transcripts in the initial appeal from the judgment, *People v. Vargas et al.* (May 19, 2017, H041706 [nonpub. opn.]) (*Vargas* H041706). Specifically, Vargasarellano requests judicial notice of his pretrial motions in limine, the transcript of the hearing on those motions in limine, and the transcript of the gang expert witness's direct examination at trial. The Attorney General did not oppose the request for (continued)

Code section 1109.[2] He further contends that he is entitled to resentencing due to intervening legislative changes to section 654. The Attorney General does not agree that Vargasarellano is entitled to either a new trial or resentencing due to changes in the law.

We agree with the Attorney General that Vargasarellano is not entitled to a new trial under newly-enacted section 1109. For the reasons explained below, we also agree with Vargasarellano that he is entitled to resentencing pursuant to the amended version of section 654, as it is not clear the trial court, in exercising its newly-granted discretion under that statute, would have imposed the same sentence.

Accordingly, we will reverse the judgment and, on remand, direct the trial court to vacate the true findings on the gang enhancements (§ 186.22) charged in connection with counts 3 and 5 as well as the alternate penalty provision (§ 186.22, subd. (d)) charged in connection with count 6. The prosecutor may elect to retry the gang enhancement allegations and the alternate penalty provision. If the prosecutor elects not to proceed with a retrial, or at the conclusion of any such retrial, the trial court shall resentence Vargasarellano in accordance with current law and prepare a new minute order and abstract of judgment consistent with our instructions.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

### A. Procedural background

In 2014, Vargasarellano was convicted by a jury of one count of burglary of an inhabited dwelling (§§ 459, 460, subd. (a); count 2), two counts of assault (§ 245, subd. (a)(4); counts 3, 5), and one count of misdemeanor vandalism (§ 594, subds. (a), (b)(2)(A); count 6). The jury also found true criminal street gang enhancements (§ 186.22, subd. (b)(1)(A), (C)) alleged in connection with the burglary (count 2) and

---

judicial notice. We grant the request for judicial notice in its entirety. (Evid. Code, §§ 452, subd. (d), 459, subd. (a).)

[2] Unspecified statutory references are to the Penal Code.

2

assault (counts 3, 5) charges. The trial court sentenced Vargasarellano to "a total term of 16 years in prison, consisting of the middle term of eight years on count 2, plus a consecutive two-year term on count 5, along with the five year enhancement under Proposition 8 (§ 667.5, subd. (a)) and a one-year prison prior enhancement. The court further imposed, but stayed a middle term of six years on count 3 pursuant to section 654. The court imposed a middle term of four years, to run concurrent, on count 6. The 10 year gang enhancements were stricken." (*Vargas* H041706, *supra*, at p. 6.)

On November 25, 2019, this court vacated the judgment and remanded the case for resentencing to allow the trial court to consider striking a serious felony conviction or a prison prior under amended statutes. (*People v. Vargasarellano* (Nov. 25, 2019, H045538) [nonpub. opn.] (*Vargasarellano*).)[3] We also invited Vargasarellano to request a hearing on his ability to pay the fines and fees. (*Ibid.*)

At resentencing, the trial court struck the one year prison prior imposed under section 667.5, subdivision (b) due to the redesignation of that prior conviction from a felony to a misdemeanor.[4] The court reimposed an eight year term on Vargasarellano's first degree burglary conviction (§§ 459, 460; count 2), consisting of the middle term of

---

[3] That appeal arose from Vargasarellano's resentencing following this court's 2017 nonpublished decision in *People v. Vargas et al.* (May 19, 2017, H041706), in which Vargasarellano sought to redesignate a prior conviction for receipt of stolen property as a misdemeanor pursuant to section 1170.18, subdivision (k). (*Vargas* H041706, *supra*, at p. 18.) In that opinion, we also directed the trial court to strike a prison prior enhancement and stay the sentence on one of Vargasarellano's two assault convictions (§ 245, subd. (a)(4)) under former section 654. (*Vargas* H041706, *supra*, at p. 18.) On our own motion, we take judicial notice of our prior opinions in *Vargas* and *Vargasarellano*. (Evid. Code, §§ 452, 459.)

[4] The redesignation was the result of Vargasarellano's petition for writ of habeas corpus alleging that his trial counsel was ineffective for failing to file a renewed petition seeking such redesignation under section 1170.18. (*In re Vargasarellano* (Nov. 25, 2019, H047012) [nonpub. ord.].) After this court issued an order to show cause, the trial court granted the relief sought and Vargasarellano withdrew his habeas petition.

four years, doubled due to a prior strike (§ 1170.12). Consistent with our prior opinion, the trial court stayed the middle term sentence on both of Vargasarellano's assault convictions (§ 245; counts 3, 5), pursuant to section 654. The court reimposed a concurrent four year term on the felony[5] vandalism conviction (§ 594; count 6.) Consistent with its original sentencing, the court struck the gang enhancements (§ 186.22, subd. (b)(1)(a)) associated with the assault charges (§ 245; counts 3, 5). Due to Vargasarellano's demonstrated efforts at rehabilitation, the trial court exercised its discretion and struck the five year prior serious felony enhancement (§ 667, subd. (a)). The trial court also noted that it was striking this enhancement because it was relying on the same prior serious felony conviction to double the punishment imposed on count 2. Vargasarellano's aggregate sentence was eight years.

With respect to fines and fees, the court imposed a restitution fine of $4,000 (§ 1202.4, subd. (b)), a $4,000 parole revocation fine (suspended) (§ 1202.45), a $41 crime prevention fine (including penalty assessments (§ 1202.5)), a $60 criminal conviction assessment (Gov. Code, § 70373), and a court security fee of $80 (§ 1465.8). The court reimposed victim restitution (§ 1202.4, subd. (f)) in the amount of $3,782, with joint and several liability to Vargasarellano's codefendants. The court emphasized that it was staying all fines and fees until Vargasarellano's release from prison.[6]

During the pendency of the instant appeal, Vargasarellano asked that the trial court amend the sentencing minute order and abstract of judgment. Because the minute order used the singular "FINE" rather than the plural "FINES" and did not specify which "FINE" was stayed, the California Department of Corrections and Rehabilitation (CDCR)

---

[5] At Vargasarellano's original sentencing, the court elevated this offense from a misdemeanor pursuant to section 186.22, subdivision (d).

[6] The trial court expressly noted Vargasarellano's obligation to pay direct victim restitution was *not* stayed.

4

would not stay any of the fines and fees imposed.[7]  In response, the superior court clerk prepared an amended minute order, drawing an arrow between the words "Fine/Fees" to the word "STAYED."  The trial court also prepared a signed order stating, "The 03/06/2020 minute order to be amended to show:  Fines/Fees stayed until release from CDCR."  However, the preprinted minute order form itself continued to state "Fine/Fees" rather than "Fines/Fees" and the abstract of judgment was not amended.

When defense counsel contacted the trial court, she was advised that the preprinted language was standard, but the courtroom clerk supervisor would contact the judge about the issue.  The trial court took no action to amend the minute order and abstract of judgment.

### B. Factual background[8]

The two victims, Liliana Grajeda and Alejandro Montes, were in their upstairs apartment when they saw a juvenile, associated with Vargasarellano and his codefendant, Martinez, steal a box of strawberries from a vendor's cart.  (*Vargas* H041706, *supra*, at pp. 3-4.)  Montes went out and confronted Vargasarellano and the others, telling them they should pay the vendor for the berries, but Vargasarellano responded that it was none of Montes's business.  (*Id*. at p. 4.)

Grajeda indicated that she was going to call the police, and Martinez yelled back that Grajeda should go ahead because the police would "take [her family]" instead since they were "wetbacks."  (*Vargas* H041706, *supra*, at p. 4.)  Martinez then shouted obscenities at Montes, poured beer on him, and hit him on the head with the beer can

---

[7] Similarly, the abstract of judgment provides:  "Fine stayed until release from CDCR."

[8] A more detailed summary of the evidence introduced at Vargasarellano's trial is found in this court's opinion in *Vargas*, *supra*, (May 19, 2017, H041706 [nonpub. opn.]). We provide a brief summary of the facts, which we derive from our prior opinion.

5

several times. (*Id.* at pp. 4-5.) Four other people surrounded Montes, and Vargasarellano took off his shirt, challenging Montes to fight. (*Id.* at p. 5.)

When Martinez dared Montes to hit her, Grajeda called out that Montes would not hit a woman and said Martinez should come up and fight her instead. (*Vargas* H041706, *supra*, at p. 5.) Martinez ran upstairs and attacked Grajeda in her apartment, punching her in the head several times, breaking her nose and drawing blood.[9] (*Id.* at pp. 5, 6.) Shantinee[10] and another person tried to pull Martinez off of Grajeda, breaking a small window in the struggle. (*Id.* at pp. 5, 6.) Montes and his nephew also ran up to the apartment, followed closely by Vargasarellano and two other men. (*Ibid.*) Montes tried to close the door behind him, but Vargasarellano and the others pushed their way in and attacked Montes. (*Ibid.*) Vargasarellano's brother broke a larger window in the apartment, showering Martinez and Grajeda with broken glass. (*Id.* at p. 6.)

After the fight ended, Vargasarellano's brother told the victims, "this is what happens when you mess with us" and "Norte," which Grajeda's daughter knew referred to Norteño gangs. (*Vargas* H041706, *supra*, at p. 5.)

A neighbor testified for the defense, saying she heard Shantinee scream, "They're stabbing me," followed by Vargasarellano saying he had to get Shantinee out of the apartment.[11] (*Vargas* H041706, *supra*, at p. 7.) When Shantinee exited the apartment, the neighbor could see her arm was bleeding. (*Ibid.*) The neighbor did not see Vargasarellano strike anyone, break any windows, or kick the victims' door. (*Ibid.*)

---

[9] Grajeda underwent surgery for her broken nose. (*Vargas* H041706, *supra*, at p. 6.)

[10] Shantinee was Vargasarellano's girlfriend.

[11] Montes's nephew, who was in the apartment during the assault, testified that Shantinee did not call out that she was being stabbed. (*Vargas* H041706, *supra*, at p. 14.)

## II.    DISCUSSION

### A. The minute order and abstract of judgment must be corrected

Vargasarellano argues, and the Attorney General concedes, that the minute order and abstract of judgment must be corrected to reflect the trial court's oral pronouncement that all fines and fees, with the exception of the victim restitution fine, are stayed until Vargasarellano is released from prison.  We agree that the concession is well taken.

It is well established that " ' "[r]endition of judgment is an oral pronouncement." ' [Citation.]  When there is a discrepancy between the oral pronouncement of judgment and the minute order, the oral pronouncement controls." (*People v. Morales* (2014) 224 Cal.App.4th 1587, 1594.)

Here, the trial court was clear in stating that all fines and fees imposed, except for victim restitution, were to be stayed while Vargasarellano was in prison.  We will therefore direct the trial court to amend the minute order and abstract of judgment accordingly.

### B. Vargasarellano was not prejudiced by failure to bifurcate the gang enhancements

Effective January 1, 2022, Assembly Bill No. 333 (2021-2022 Reg. Sess.) amended section 186.22 (Stats. 2021, ch. 699, § 4) and added section 1109 (Stats. 2021, ch. 699, § 5) to the Penal Code. Section 1109, subdivision (a) provides that, upon request by the defense, a gang enhancement charged under subdivision (b) or (d) of section 186.22 shall be tried separately after determination of the defendant's guilt of the underlying charge.  Section 1109, subdivision (b) provides that a violation of section 186.22, subdivision (a) shall be tried separately from all other charges that do not require gang evidence as an element of the offense.

In supplemental briefing, Vargasarellano argues that the bifurcation requirement created by section 1109 applies retroactively to his conviction, which is not yet final.  He further argues that the failure to bifurcate requires that we reverse the entire judgment and

7

remand for a new bifurcated proceeding because the introduction of the unduly prejudicial and inflammatory gang evidence deprived him of a fair trial. The Attorney General disagrees on both points.

As our Supreme Court has recently noted, case law is split on the question of whether section 1109 applies retroactively to convictions that are not yet final. (*People v. Tran* (2022) 13 Cal.5th 1169, 1208.) Although the Supreme Court declined to resolve that split in authority (*Tran*, *supra*, at p. 1208),[12] it held that, absent a showing that the failure to bifurcate rendered the original trial fundamentally unfair, the matter will be reviewed for harmless error under *Watson*.[13] (*Tran*, *supra*, at p. 1209.) As we will explain, we take the same approach here. Assuming without deciding that section 1109 applies retroactively, any asserted failure to bifurcate the trial of the gang allegations was harmless as to Vargasarellano's guilty verdicts.

First, the evidence of Vargasarellano's guilt on the underlying charges of burglary, assault, and vandalism included detailed testimony about the offenses from the victims. Grajeda testified that, after she and Montes observed Vargasarellano's companion steal a box of strawberries, Montes went down and confronted the group. (*Vargas* H041706, *supra*, at pp. 3-4.) She testified that, after challenging Martinez, Martinez ran upstairs to Grajeda's apartment and began to assault her. (*Id*. at p. 5.) Montes testified that, after Martinez struck him on the head with a beer can, she ran upstairs to attack Grajeda. (*Id*. at p. 6.) Montes also ran upstairs, with Vargasarellano right behind him. (*Id*. at pp. 5-6.) Montes further testified that when he tried to close the door behind him, Vargasarellano and another man shoved the door open and attacked him. (*Ibid*.) In the course of the struggle, the attackers broke two windows in the apartment. (*Ibid*.) In such

___

[12] The question of whether section 1109 applies retroactively is currently under review by the California Supreme Court in *People v. Burgos* (2022) 77 Cal.App.5th 550, review granted July 13, 2022, S274743.

[13] *People v. Watson* (1956) 46 Cal.2d 818, 836.

8

circumstances, "it is unlikely the defendant was harmed by the format of the trial." (*People v. E.H.* (2022) 75 Cal.App.5th 467, 480 (*E.H.*), citing *People v. Pinholster* (1992) 1 Cal.4th 865, 931, overruled on other grounds in *People v. Williams* (2010) 49 Cal.4th 405, 459 [failure to bifurcate was harmless because of overwhelming evidence of defendant's guilt on relevant charges].)

Second, section 1109 does not necessarily preclude gang-related evidence in a bifurcated trial if the evidence relates to the underlying charges. (*People v. Ramos* (2022) 77 Cal.App.5th 1116, 1132.) Here, as in *Ramos*, much of the gang-related evidence was relevant to Vargasarellano's actions prior to the assault, and his motive for his actions, i.e., assisting his fellow gang members. (*Ibid.*; see also *People v. Hernandez* (2004) 33 Cal.4th 1040, 1049-1050 ["To the extent the evidence supporting the gang enhancement would be admissible at a trial of guilt, any inference of prejudice would be dispelled, and bifurcation would not be necessary."].) For example, after the incident was over, but before police arrived, one of the attackers (Vargasarellano's brother) confronted the victims, saying " 'this is what happens when you mess with us' " and " 'Norte.' " (*Vargas* H041706, *supra*, at p. 5.)

Even assuming section 1109 is retroactively applicable in this case, applying the *Watson* standard, we conclude that it is not reasonably probable that the outcome of the trial on the underlying charges would have been different in the absence of any gang evidence that would not have been otherwise admissible. Consequently, the failure to bifurcate the trial of the gang allegations was not prejudicial error and there is no basis for reversing Vargasarellano's convictions.

### C. Reversal of gang enhancements and alternate penalty

Alternatively, in his original supplemental brief, Vargasarellano claims he is entitled to reversal and retrial of the gang enhancements that were based in part on evidence showing the alleged benefit to the gang in committing the offenses was reputational in nature. The Attorney General counters that this argument is moot because

the trial court, at both the original sentencing hearing and the resentencing hearing, struck the gang enhancements.[14]  We agree with Vargasarellano that the gang enhancements, as well as the alternate penalty imposed on count 6, must be reversed.

Section 186.22, subdivision (g), as amended by Assembly Bill No. 333, now provides:  "As used in this chapter, to benefit, promote, further, or assist means to provide a common benefit to members of a gang where the common benefit is more than reputational.  Examples of a common benefit that are more than reputational may include, but are not limited to, financial gain or motivation, retaliation, targeting a perceived or actual gang rival, or intimidation or silencing of a potential current or previous witness or informant."  As explained in *E.H.*, *supra*, 75 Cal.App.5th 467, the amendment to section 186.22, subdivision (g) "essentially adds new elements to the . . . enhancements in section 186.22" and therefore "the prejudice standard articulated in *Chapman v. California* (1967) 386 U.S. 18, 24 applies."  (*E.H.*, *supra*, at p. 479.)  As the jury was not (and could not have been) instructed pursuant to the amended version of section 186.22, any verdict on the gang enhancements must be reversed "unless 'it appears beyond a reasonable doubt that the error did not contribute to th[e] jury's verdict.' "  (*E.H.*, *supra*, at p. 479.)

The same logic would apply to the alternate penalty imposed on Vargasarellano on count 6.  "[S]ection 186.22[, subdivision] (d) prescribes an alternate penalty when the

_____

[14] Although Vargasarellano agreed with the Attorney General in his reply that his claim as to the gang enhancements alleged in connection with counts 3 and 5 was moot, he withdrew that concession at oral argument.  He maintains that the gang enhancement alleged in connection with count 6 (§ 186.22, subd. (d)), on which the trial court relied to elevate his conviction from a misdemeanor to a felony, must be reversed and retried.  At oral argument, the Attorney General pointed out that section 186.22, subdivision (d) is an alternate penalty provision, not an enhancement, citing *Robert L. v. Superior Court* (2003) 30 Cal.4th 894, 900 (*Robert L.*).  As discussed below, we disagree that the claim is moot with respect to either of the gang enhancements alleged in counts 3 and 5 or the alternate penalty provision alleged in count 6.

10

underlying offense is committed under specified circumstances; here, for the benefit of, at the direction of, or in association with, a criminal street gang." (*Robert L.*, *supra*, 30 Cal.4th at p. 900.) The alternate sentence prescribed by section 186.22, subdivision (d) may only be imposed however "when it is *proven* that the underlying offense has been committed for the benefit of, or in association with, a criminal street gang." (*Robert L.*, *supra*, at p. 899, italics added.) Because the standard for proving that a particular offense has been committed for the benefit of a criminal street gang has changed, by virtue of the amendments to section 186.22, subdivision (g), it stands to reason that any sentencing decision reliant on the former version of that statute, whether it be an enhancement or alternate penalty, is no longer valid.

At trial, the prosecution presented gang expert testimony to show that one of the motivating factors for Vargasarellano and Martinez committing the burglary and assault was to bolster the reputation of their gang, by instilling fear in their community and demonstrating what happens to members of the public who try to stand up to them. Although there was evidence of benefits to Vargasarellano's gang that was more than reputational, such as an effort to intimidate or silence the witnesses in this case, "we cannot rule out the possibility that the jury relied on reputational benefit to the gang as its basis for finding the enhancements true." (*People v. Sek* (2022) 74 Cal.App.5th 657, 669.) On this record, we cannot presume that a jury would have found true the gang enhancement allegations in counts 3 and 5 or that Vargasarellano committed the vandalism for the benefit of a criminal street gang as alleged in count 6 absent evidence of this reputational benefit. (*Ibid.*; *E.H.*, *supra*, 75 Cal.App.5th at p. 480.)

The fact that the trial court has twice now struck the punishment associated with the gang enhancements in counts 3 and 5 does not render this issue moot. Striking an enhancement's punishment is not the same as striking the enhancement itself and "an enhancement finding could impact defendant in a future case." (*People v. Fuentes* (2016) 1 Cal.5th 218, 225.) "Enhancements do not have a life of their own. They derive their

11

vitality from and form a part of the crime to which they are attached and alter the consequences the offender may suffer. The most direct consequence is additional punishment. But there are other consequences[.] . . . Striking an aspect of an enhancement does not 'operate to defeat the factual finding of the truth of the [allegation], instead, such act merely serves to prohibit a certain purpose for which the [allegation] may be used.' " (*In re Pacheco* (2007) 155 Cal.App.4th 1439, 1445.)

Accordingly, we will reverse the findings on the gang enhancement allegations as well as the finding that Vargasarellano committed vandalism for the benefit of a criminal street gang. On remand, the prosecutor may elect to retry those allegations or request that the trial court strike them.

### D. Vargasarellano is entitled to resentencing under amended section 654

Finally, Vargasarellano contends that the matter must be remanded for resentencing so that the trial court may exercise its discretion under recently amended section 654 and sentence him under count 5, instead of count 2. The Attorney General argues that remand would be an idle act as Vargasarellano's original sentence of 16 years was first reduced to 14 years (resentencing following *Vargas*, *supra*, (May 19, 2017, H041706 [nonpub. opn.]) and then, on March 6, 2020, reduced further to eight years (resentencing following *Vargasarellano*, *supra*, (Nov. 25, 2019, H045538 [nonpub. opn.]). In the most recent resentencing, the trial court exercised its discretion under amendments to sections 667, subdivision (a) and 1385, subdivision (b) and struck the five-year serious felony enhancement.

We agree with Vargasarellano that he is entitled to resentencing so that the trial court can exercise its discretion under section 654, as amended.

Section 654 prohibits multiple punishment for a single act or omission. (See *People v. Delgado* (2017) 2 Cal.5th 544, 570.) At the time of Vargasarellano's resentencing, section 654 required the trial court to punish a defendant "under the

12

provision that provide[d] for the longest potential term of imprisonment." (§ 654, former subd. (a).)

Effective January 1, 2022, section 654 was amended by Assembly Bill No. 518 to give the trial court discretion to select the provision under which a defendant would be punished. As relevant here, section 654 now provides, "An act or omission that is punishable in different ways by different provisions of law *may be punished under either of such provisions*, but in no case shall the act or omission be punished under more than one provision." (§ 654, subd. (a), italics added.)

The amendment of section 654 was an ameliorative change to the law as trial courts are no longer required to impose a sentence under the provision that provides for the longest term of imprisonment when a defendant is convicted of multiple crimes for a single act or omission. Thus, as the parties agree, Vargasarellano is entitled to the retroactive application of amended section 654 because there is no indication that the Legislature intended the law to apply prospectively only, and this case is not yet final on appeal. (See, e.g., *People v. Mani* (2022) 74 Cal.App.5th 343, 379-380; *People v. Sek*, *supra*, 74 Cal.App.5th at pp. 673-674; *People v. Mendoza* (2022) 74 Cal.App.5th 843, 861-862.)

A "remand [for resentencing] is required unless the record shows that the trial court clearly indicated when it originally sentenced the defendant that it would not in any event have stricken a[n] . . . enhancement." (*People v. McDaniels* (2018) 22 Cal.App.5th 420, 425.) The salient question is whether the trial court "express[ed] its intent to impose the maximum sentence permitted." (*Id.* at p. 427.) "When such an expression is reflected in the appellate record, a remand would be an idle act because the record contains a clear indication that the court will not exercise its discretion in the defendant's favor." (*Ibid.*) Without a clear indication of the trial court's intent, remand is required. (*People v. Gutierrez* (2014) 58 Cal.4th 1354, 1391 (*Gutierrez*).) Therefore, we must

13

review the record to determine whether remand is required or if it "would be an idle act." (*People v. Flores* (2020) 9 Cal.5th 371, 432.)

In this case, the record does not " 'clearly indicate[]' " whether the trial court would have decided to impose the longer sentence on count 2 and stay the shorter sentence on counts 3 or 5 had it the discretion to do so. (*Gutierrez, supra*, 58 Cal.4th at p. 1391.) The trial court resentenced Vargasarellano to the middle term of four years (doubled to eight years due to a strike prior) on the burglary conviction (§§ 459, 460; count 2). However, this was the only possible outcome at the time since former section 654 prohibited the trial court from sentencing Vargasarellano on the assaults on Grajeda or Montes (§ 245, subd. (a)(4); counts 3, 5), both of which arose from the same course of conduct but carried a lesser term. The trial court made no indication that it intended to impose the maximum possible sentence on Vargasarellano or that it would not impose a lesser sentence had it the power to do so. Section 654 as amended now permits the court to impose a lesser term and stay a longer one.

On this record, we determine that remand is necessary so that the trial court can exercise its sentencing discretion under section 654, as amended. We express no opinion on how the trial court should exercise its discretion.

### III.    DISPOSITION

The judgment is reversed. The trial court is directed to vacate the true findings on the gang enhancements (Pen. Code, § 186.22) charged in connection with counts 3 and 5 and the alternate penalty provision (Pen. Code, § 186.22, subd. (d)) charged in connection with count 6. The matter is remanded to the trial court for a possible retrial of the gang enhancement allegations and alternate penalty provision. If the prosecutor elects not to proceed with a retrial, or at the conclusion of the retrial, the trial court shall resentence defendant, including by applying amended Penal Code section 654. The trial court is also instructed to ensure that the minute order and abstract of judgment prepared in

14

connection with resentencing accurately reflect its intention to stay all fines and fees with the exception of victim restitution (Pen. Code, § 1202.4, subd. (f).)

_____
                               Wilson, J.

WE CONCUR:


_____
Bamattre-Manoukian, Acting P.J.




_____
                    Danner, J.




<u>People v. Vargasarellano</u>
H048062